UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

INNOMED LABS, LLC,

                                        Debtor.

_____

JEFFREY L. SAPIR, as Chapter 7 Trustee of
the Estate of INNOMED LABS, LLC,

                                        Plaintiff,

        -against-

HOGIL PHARMACEUTICAL CORP.

                                        Defendant.

Chapter 7
Case No. 02-22644 (ASH)

Adv. Pro. No.

COMPLAINT

        Plaintiff, Jeffrey L. Sapir ("Plaintiff"), the Chapter 7 Trustee of the Estate of Innomed

Labs, LLC ("Debtor"), by his attorneys, Robinowitz Cohlan Dubow & Doherty, LLP, special

counsel to the Chapter 7 Trustee, complaining of the Defendant, Hogil Pharmaceutical Corp.,

respectfully alleges as follows:

                              JURISDICTION AND PARTIES

        1.      This action arises under 11 U.S.C. §§ 541 (a) (1) and (7), 11 U.S.C. § 542 (a) and

(b), Rules 6009, 7001 (1) and 7008 of the Federal Rules of Bankruptcy Procedure and the

common law of the State of New York.

        2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and

1334.

3.      The statutory predicates for this proceeding are 11 U.S.C. §§ 541 (a) (1) and (7), 542 (a) and (b) and Bankruptcy Rules 6009, 7001 (1) and 7008, as this action arises in and under the pending Chapter 7 case of the Debtor.

4.      This is a core proceeding pursuant to 28 U.S.C. §§ 157 (b) (2) (A), (E) and (O).

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409 (a).

6.      On April 30, 2002, Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

7.      On December 20, 2002, an Order was signed converting Debtor's bankruptcy case to a case under Chapter 7 of the United States Bankruptcy Code.

8.      The Plaintiff is the duly appointed bankruptcy Trustee in the Debtor's Chapter 7 case, having been appointed on December 27, 2002.

9.      The Defendant, Hogil Pharmaceutical Corp. ("Defendant"), is a corporation duly organized and existing pursuant to the laws of the State of New York with a principal place of business at 237 Mamaroneck Avenue, White Plains, New York.

10.      Robinowitz Cohlan Dubow & Doherty LLP ("RCD&D" or "Special Counsel") is Special Counsel to Plaintiff pursuant to an Order granted in Debtor's pending Chapter 7 case on April 3, 2007 appointing RCD&D as Special Counsel and authorizing RCD&D to investigate possible claims by Debtor against Defendant and Howard Wendy and to commence litigation against Defendant and/or Howard Wendy following the completion of the investigations and consultation between the Chapter 7 Trustee and RCD&D as deemed appropriate.

11.      Eisman Zucker Klein & Ruttenberg, LLP ("EZK&R") are forensic accountants to Plaintiff, having been appointed pursuant to an Order in Debtor's pending Chapter 7 case on

2

September 27, 2007 <u>nunc</u> <u>pro</u> <u>tunc</u> to assist Plaintiff and Special Counsel in Special Counsel's

investigation of possible claims by Debtor against Defendant and Howard Wendy and to assist

Plaintiff and Special Counsel in connection with any litigation commenced by Special Counsel

on behalf of Plaintiff against Defendant and/or Howard Wendy following the completion of

Special Counsel's investigation.

<u>BACKGROUND</u>

12.    On or about January 16, 1998, Debtor entered into an asset purchase agreement

with Novartis Consumer Health Inc. ("Novartis") whereby Debtor purchased the "Efidac/24"

trademark and certain inventory with respect thereto.

13.    On or about January 16, 1998, Debtor and Defendant entered into an agreement

pursuant to which Debtor engaged the services of Defendant to distribute, market and sell on

behalf of Debtor all products sold under the "Efidac/24" trademark and to manage all aspects

relating thereto ("the Agreement").

14.    The Agreement between Debtor and Defendant further provided for Debtor to pay

to Defendant fifteen percent of net sales relating to the products sold under the "Efidac/24"

trademark; for Debtor to pay all commissions to sales brokers in Defendant's sales network at a

rate of five percent of net sales relating to the products sold under the "Efidac/24" trademark; for

Debtor to pay all marketing expenses directly relating to the products sold under the "Efidac/24"

trademark; and for Debtor to reimburse Defendant for all vouchered business and entertainment

expenses directly relating to the distribution, marketing and selling of all products sold under the

"Efidac/24" trademark.

15.    In furtherance of the aforesaid Agreement between Debtor and Defendant, Defendant handled all record keeping and invoicing with respect to the sale of the products sold under the "Efidac/24" trademark; Defendant received all payments from customers to whom products under the "Efidac/24" trademark were sold; Defendant calculated all sums owed by Debtor to Defendant for Defendant's fifteen percent sales fee, sales broker commissions, marketing expenses and reimbursement for all vouchered business and entertainment expenses in accordance with the Agreement; Defendant calculated all sums owed by Defendant to Debtor after the deductions called for by the Agreement were made; and Defendant was to remit to Debtor all sums received by Defendant in payment for products sold under the "Efidac/24" trademark after deducting the amounts to be paid by Debtor to Defendant in accordance with the Agreement.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

16.    Plaintiff repeats and realleges each and every allegation set forth at paragraphs "1" through "15" above as if fully set forth at length herein.

17.    On November 2, 1999, Defendant filed a Petition for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of New York, case number 99 B 11107 (JJC).

18.    At the time of the filing of the Petition, Defendant owed Debtor the sum of $372,105.00, which was listed in the schedules to Defendant's Petition as the amount due and owing from Defendant to Debtor.

4

19.    On December 8, 2000, an Order was granted in Defendant's bankruptcy proceeding approving Defendant's Third Amended Plan of Reorganization as modified ("Defendant's approved Plan").

20.    Defendant's approved Plan and the accompanying Disclosure Statement treated the debt owed by Defendant to Debtor as a Class 5 Claim and provided that Debtor as the holder of a Class 5 Claim would receive either one hundred percent or fifty percent of Debtor's allowed claim at the same time and with the same conditions described for Class 4 Claims.

21.    The provisions of Defendant's approved Plan and the accompanying Disclosure Statement governing the payment of Class 4 Claims which also apply to payment of Class 5 Claims provided that payments were to be made when Defendant was sold or refinanced, but not later than the 30th month anniversary of the effective date of the Plan.

22.    The provisions of Defendant's approved Plan and the accompanying Disclosure Statement governing the payment of Class 4 Claims which also apply to payment of Class 5 Claims further provided that if the net proceeds of the sale or refinancing of Defendant were to exceed the threshold amount as defined in the Plan and accompanying Disclosure Statement, then each holder would receive one hundred percent of the amount of its claim, while if the net proceeds of the sale or refinancing did not exceed the threshold amount, then each holder would receive fifty percent of the amount of its claim.

23.    The Class 5 Claim owed by Defendant to Debtor pursuant to Defendant's Plan has become due and payable, but no part thereof has been paid by Defendant to Debtor or to Plaintiff.

5

24.     None of the documents produced by and/or on behalf of Defendant to Special

Counsel or EZK&R during the course of the investigation by Special Counsel addressed the

amount due and owing from Defendant to Debtor pursuant to the Class 5 Claim.

25.     EZK&R specifically requested information from Defendant's counsel in

connection with the Class 5 Claim to determine the amount due and owing to Debtor in

accordance with the Class 5 Claim, but was not provided with the requested information.

26.     Defendant has failed to account to Debtor or to Plaintiff as to the whether there

was a sale or refinancing of Defendant exceeding the threshold amount.

27.     In the event there was a sale or refinancing of Defendant exceeding the threshold

amount, Defendant is liable to Plaintiff for one hundred percent of the allowed claim of

$372,105.00.

28.     In the event there was not a sale or refinancing of Debtor exceeding the threshold

amount, Defendant is liable to Plaintiff for fifty percent of the allowed claim of $372,105.00.

29.     The sums which are due and owing to Plaintiff from Defendant with respect to the

Class 5 Claim constitute legal or equitable interests of Debtor in property as of the

commencement of Debtor's bankruptcy case pursuant to 11 U.S.C § 541 (a) (1) and/or an interest

in property which the Debtor's Estate acquired after the commencement of Debtor's bankruptcy

case pursuant to 11 U.S.C. § 541 (a) (7).

30.     As a result of the foregoing, Defendant is liable to Plaintiff in the sum of

$372,105.00 in the event there was a sale or refinancing of Defendant exceeding the threshold

amount, together with interest from the date of the sale or refinancing, or alternatively, Defendant

is liable to Plaintiff in the sum of $186,052.50 in the event there was no sale or refinancing

6

exceeding the threshold amount, together with interest from on or about July 2, 2003, the 30th

month anniversary date of the effective date of Defendant's Plan.

## AS AND FOR A SECOND CAUSE OF ACTION

31.    Plaintiff repeats and realleges each and every allegation set forth at paragraphs "1"

through "15" and "16" through "30" above as if fully set forth at length herein.

32.    Following approval of Defendant's Chapter 11 Plan, the January 16, 1998

Agreement between Debtor and Defendant remained in full force and effect and Defendant

continued to distribute, market and sell on behalf of Debtor all products sold under the

"Efidac/24" trademark and to manage all aspects relating thereto under the terms and conditions

set forth in paragraphs "13" and "14" hereinabove and performed the services described in

paragraph "15" hereinabove.

33.    Pursuant to the Agreement between Debtor and Defendant and the manner in

which the Agreement was performed, including Defendant's receipt of all funds paid by

customers for the purchase of products sold under the "Efidac/24" trademark; Defendant's

calculation of the sums due from Debtor to Defendant; Defendant's deduction of the sums

calculated by Defendant to be due to Defendant from Debtor prior to remittance of funds to

Debtor; and Defendant's remittance of payments to Debtor; a fiduciary relationship was created

by which Defendant owed a fiduciary duty to Debtor.

34.    Based upon information set forth in Defendant's Income Tax Returns for 2001

and 2002 and Debtor's Income Tax Returns for 2001 and 2002, Defendant owed Debtor

$563,988.00 as of January 1, 2002.

7

35.      Based upon information set forth in Defendant's Income Tax Returns for 2002 and 2003, the amount owed by Defendant to Debtor had been reduced to $25,364.00 as of December 31, 2002.

36.      Based upon information set forth in Defendant's Income Tax Return for 2003, the amount owed by Defendant to Debtor had been reduced to zero as of December 31, 2003.

37.      During the course of Special Counsel's investigation of Defendant, Special Counsel and EZK&R attempted to examine the transactions by which the sum of $563,988.00 which was owed by Defendant to Debtor at the beginning of 2002 was reduced to $25,364.00 by the end of 2002 and was further reduced to zero during 2003 in order to determine if the amount owed by Defendant to Debtor was validly and properly reduced from $563,988.00 to zero, or if there were still sums due and owing from Defendant to Debtor.

38.      Special Counsel's investigation included Special Counsel's review of documents produced by Defendant through its counsel, review of documents made available by Defendant at a warehouse, review of documents made available by Defendant at the office of Defendant's accountant and Rule 2004 Examinations of Defendant's President, Defendant's Chairman, Defendant's Assistant Controller and Defendant's accountant.

39.      In order to assist Special Counsel in its investigation, EZK&R reviewed the documents received by Special Counsel, reviewed documents at the warehouse, including documents which it is believed were not made available to Special Counsel at the time Special Counsel reviewed documents at the warehouse, and reviewed documents at the office of Defendant's accountant.

8

40.     EZK&R also made specific requests for documents and information to Defendant's counsel in an attempt to determine if the amount owed by Defendant to Debtor was validly and properly reduced from $563,988.00 to zero, but EZK&R was not provided with the specific documents which it requested and which were required in order to determine if the amount owed by Defendant to Debtor at the beginning of 2002 was validly and properly reduced from $563,988.00 to zero.

41.     The documentation provided to Special Counsel and to EZK&R with respect to the transactions by which the amount owed by Defendant to Debtor at the beginning of 2002 was reduced to zero consisted of journal entries for which no supporting documentation was provided, thereby preventing Special Counsel, EZK&R and the Trustee from determining the validity and propriety of the transactions by which the amount owed by Defendant to Debtor at the beginning of 2002 in the sum of $563,988.00 was reduced to zero.

42.     As a result of Defendant's failure to provide the documentation required to determine the validity and propriety of the transactions by which the amount owed by Defendant to Debtor at the beginning of 2002 in the sum of $563,988.00 was reduced to zero, Special Counsel, EZK&R and Plaintiff are unable to determine if there are sums which were due and owing to Debtor as of the beginning of 2002 which remain due and owing to Debtor.

43.     Based upon the foregoing facts, Plaintiff is entitled to a complete and detailed accounting from Defendant with respect to all transactions between Defendant and Debtor commencing January 1, 2002 by which the amount due and owing from Defendant to Debtor was reduced from $563,988.00 to zero.

44.     Plaintiff has no adequate remedy at law.

9

## AS AND FOR A THIRD CAUSE OF ACTION

45.     Plaintiff repeats and realleges each and every allegation set forth at paragraphs "1"

through "15", "16" through "30" and "31" through "44" above as if fully set forth at length

herein.

46.     In the event the accounting hereinabove requested by Plaintiff reveals that there

are sums of money due and owing from Defendant to Debtor, such sums of money would

constitute legal or equitable interests of Debtor in property as of the commencement of Debtor's

bankruptcy case pursuant to 11 U.S.C § 541 (a) (1) and/or an interest in property which the

Debtor's Estate acquired after the commencement of Debtor's bankruptcy case pursuant to 11

U.S.C. § 541 (a) (7).

47.      In the event the accounting hereinabove requested by Plaintiff reveals that there

are sums of money due and owing from Defendant to Debtor, then Defendant is liable to Plaintiff

for all sums of money which the accounting establishes are due and owing from Defendant to

Debtor, together with interest from the date on which such sums became due and owing from

Defendant to Debtor.

WHEREFORE, Plaintiff Jeffrey L. Sapir as Chapter 7 Trustee of the Estate of Innomed

Labs, LLC demands judgment against Defendant Hogil Pharmaceutical Corp. as follows:

a.)     On the First Cause of Action, in the sum of $372,105.00 in the event there was a

sale or refinancing of Defendant exceeding the threshold amount, together with interest from the

date of the sale or refinancing, or alternatively, Defendant is liable to Plaintiff in the sum of

$186,052.50 in the event there was no sale or refinancing exceeding the threshold amount,

together with interest from on or about July 2, 2003, the 30th month anniversary date of the

effective date of Defendant's Plan;

b.)     On the Second Cause of Action, an accounting with respect to all transactions

between Defendant and Debtor commencing January 1, 2002 by which the amount due and

owing from Defendant to Debtor was reduced from $563,988.00 to zero;

c.)     On the Third Cause of Action, a judgment for all sums of money which the

accounting establishes are due and owing from Defendant to Debtor, together with interest from

the date on which such sums became due and owing from Defendant to Debtor; and

d.)     Such other and further relief as the Court deems just, proper and equitable, plus

costs of this action.

Dated: White Plains, New York
        December 7, 2007

                                        Robinowitz Cohlan Dubow & Doherty, LLP


                        By:     /s/ Bruce Minkoff
                                Bruce Minkoff, Esq. (BM 8515)
                                Alan M. Dubow, Esq. (AMD 0126)
                                Special Counsel to Jeffrey L. Sapir,
                                Chapter 7 Trustee
                                199 Main Street
                                White Plains, New York 10601
                                (914) 949-2826


                                        11