UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK       NOT FOR PUBLICATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                Chapter 7
                                      Case No. 02-22644 (ASH)
INNOMED LABS, LLC,

                    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JEFFREY L. SAPIR, as Chapter 7 Trustee of
the Estate of INNOMED LABS, LLC,

                    Plaintiff,       Adv. Pro. No. 07-08322

        -against-

HOGIL PHARMACEUTICAL CORP.

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

A P P E A R A N C E S :

JEFFREY SAPIR, ESQ.
Chapter 7 Trustee
399 Knollwood Road
Suite 102
White Plains, New York 10603

RABINOWITZ, COHLAN, DUBOW & DOHERTY LLP
Attorney for the Plaintiff/Trustee
By: Bruce Minkoff
199 Main Street
White Plains, New York 10601

KLESTADT & WINTERS, LLP
Attorneys for Defendant and Howard Wendy
By: Tracy Klestadt
    Patrick J. Orr
292 Madison Avenue
New York, New York 10017

ADLAI S. HARDIN, JR.
UNITED STATES BANKRUPTCY JUDGE

1

**DECISION GRANTING AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the motion for summary judgment by Hogil Pharmaceutical Corp. ("Hogil") and the cross-motion for summary judgment by Jeffrey L. Sapir ("Sapir" or "Trustee"), as Chapter 7 trustee of the estate of Innomed Labs, LLC ("Innomed" or "Debtor"). The Trustee filed his complaint on December 7, 2007. The first cause of action seeks payment on a $372,105.00 debt as listed on Hogil's bankruptcy schedules. Pursuant to the Defendant's Third Amended Plan of Reorganization (the "Hogil Plan"), payment was due at the earlier of the sale or refinancing of the Defendant or the 30th month anniversary of the February 1, 2001 effective date of the Hogil Plan (August 1, 2003). After submitting an April 2002 affidavit from the chairman of Hogil indicating no refinancing took place, and after failing to produce any documents in response to Rule 2004 document requests indicating the occurrence of any refinancing transactions, Hogil now alleges a refinancing transaction took place in September 2001, barring Innomed's claim under New York's six year statute of limitations for contract claims. The Trustee contends that Hogil is precluded or estopped from arguing its statute of limitations defense.

In the second and third causes of action, Sapir seeks an accounting for and payment of a claim for $563,988.00 as the amount owed to Innomed by Hogil as of January 1, 2002 pursuant to an agreement between the parties. Based upon information from the Hogil's income tax returns and journal entries, as of December 31, 2003, the debt was reduced from $563,988.00 to zero. The second cause of action seeks a complete and detailed accounting of the Defendant, and the third cause of action seeks payment of

all sums due and owing as established from the accounting. Sapir argues that since Hogil did not produce any documentation supporting the reductions, then Hogil accordingly owes the full $563,988.00. The Defendant argues that the claim arises out of a sales and distribution agreement, with the last possible sale on March 29, 2001, and thus claims seeking recovery of amounts owed from the sales are barred under the applicable statute of limitations. Sapir contends that under Generally Accepted Auditing Standards, the Defendant's deductions were improper and therefore breaches of express or implied terms in their contract, tolling the statute of limitations period.

The Defendant further argues that it is entitled to set off against all amounts that are owed to the Plaintiff.

At the oral argument held on May 22, 2008, this Court denied Hogil's defense of the statute of limitations as to the first cause of action. For the reasons expressed previously at the oral argument and amplified in the discussion below, Hogil's motion for summary judgment is denied and Sapir's cross-motion for summary judgment is granted.

## **Jurisdiction**

This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157(a) and 1334(b) and the standing order of referral to bankruptcy judges signed by Acting Chief Judge Robert J. Ward on July 10, 1984. The adversary proceeding now before the Court is a core proceeding under 28 U.S.C. §§ 157 (b) (2) (A), (E) and (O). Venue in the Court is proper pursuant to 28 U.S.C. § 1409 (a).

**Background Facts**

On December 19, 1997, Innomed and Alza Corporation ("Alza") entered into a distribution and supply agreement (the "Alza Agreement"). Under the terms of the Alza Agreement, Innomed was given semi-exclusive distribution rights over products sold under the Efidac/24 ("Efidac") trademark.

On January 16, 1998, Innomed entered into an agreement with Hogil that referenced, and was created in connection with, the Alza Agreement (the "Efidac Agreement"). Under the Efidac Agreement, Hogil provided its services to distribute, market and sell products under the Efidac trademark on behalf of Innomed.

The Efidac Agreement further provided that Innomed pay Hogil (I) fifteen percent of net sales related to Efidac products, (ii) commissions to sales brokers in Hogil's sales network relating to the Efidac products sold, (iii) marketing expenses directly related to Efidac products sold, and (iii) reimbursements to Hogil for all vouchered business and entertainment expenses directly related to the distribution, marketing and selling of Efidac products.

In furtherance of the Efidac Agreement, Hogil handled the record keeping and invoicing with respect to the sale of Efidac products, received all payments from customers to whom Efidac products were sold, and calculated (I) all sums owed by Innomed to Hogil for Hogil's fifteen percent sales fee, (ii) all sales broker commissions, marketing expenses and reimbursements for all vouchered business and entertainment expenses in accordance with the Efidac Agreement and (iii) all sums owed by Hogil to Innomed after the deductions called for by the Agreement were made. Hogil was to remit

4

to Innomed all sums received by Hogil in payment for products sold under the Efidac trademark after deducting the amounts to be paid by Innomed to Hogil.

On March 29, 2001, Alza breached its contractual obligations by terminating the Alza Agreement. Innomed filed a lawsuit shortly thereafter, with Hogil allegedly funding Innomed's counsel, Davis & Gilbert LLP ("Davis & Gilbert"). Since Innomed and Hogil's ability to market and sell Efidac was based on the Alza Agreement, the March 29, 2001 termination of the Alza Agreement also terminated Innomed and Hogil's ability to sell Efidac.

Sapir's first cause of action arises out of Hogil's November 9, 1999 petition for relief under Chapter 11. At the time of the filing, Innomed held a secured claim against Hogil in the amount of $372,015.00. According to the Hogil Plan, which was confirmed on December 8, 2000, Innomed's claim was treated as a Class 5 claim on which payment was "deferred until a sale or refinancing of the Reorganized Debtor which shall occur on or before the PNC Maturity Date." The Hogil Plan defined the PNC Maturity Date as the first business day of the thirtieth month after the Plan's effective date. The effective date of the Hogil Plan was February 1, 2001, thus the PNC Maturity Date was August 1, 2003.

Section 1.44 of the Hogil Plan defined "Refinancing" as:

> [T]he loan to be obtained by the Reorganized Debtor on or before the PNC Maturity Date to be secured by a first prior security interest in the same collateral as set forth in the PNC Loan Agreement in an amount that would enable the Reorganized Debtor to make the payment required by Section 5.2(a) of the Plan that is due by the PNC Maturity Date, plus such other amount as the Reorganized Debtor may be able to obtain.

The Hogil Plan further provided that in the event the net proceeds of the sale or refinancing of Hogil were to exceed the threshold amount as defined in the Plan ("the amount necessary to satisfy the unpaid principal amount then due to the holder of the

5

Claim in Class 1 plus the agreed acquisition price for the Class 2 Claim"), each holder of a Class 4 or Class 5 claim would receive one hundred percent of the amount of its claim. If the threshold were not met, then each holder would receive fifty percent of the amount of its claim. It is undisputed that the threshold amount was not met. Thus, Sapir's first cause of action seeks payment of fifty percent of the Class 5 claim in the amount of $186,052.50, which became due upon the earlier of a sale or refinancing of Hogil or the August 1, 2003 PNC Maturity Date. In response, Hogil asserts that a refinancing of Hogil occurred on September 20, 2001, barring the claim by the statute of limitations. Sapir contends that Hogil should be precluded or estopped from a defense based on the statute of limitations defense since the documents produced by Hogil indicate that there had been no refinancing of Hogil.

On April 30, 2002, Innomed Labs, LLC filed a voluntary petition under Chapter 11. Subsequently, on December 20, 2002, an Order was signed converting the Debtor's case to a case under Chapter 7. Soon thereafter, Jeffrey L. Sapir, Esq. was appointed as the Chapter 7 trustee. On April 3, 2007, an order was signed authorizing the retention of the firm of Rabinowitz Cohlan Dubow & Doherty, LLP ("Special Counsel") as Special Counsel to the Trustee to investigate possible claims by Innomed against the Defendant, Hogil Pharmaceutical Corp. ("Hogil"), and Howard Wendy ("Wendy"), Chairman of Hogil and former Managing Member and Chief Executive Officer of Innomed.

On April 4, 2007, Sapir filed motions for orders pursuant to Bankruptcy Rule 2004 authorizing the examinations of Hogil, Howard Wendy and requiring the production of documents. On April 11, 2007, the Court entered orders granting the

6

motions, requiring the production of documents on or before May 1, 2007[1], and the taking of depositions on or before May 8, 2007.

In response to the requests, by May 1, 2007, Hogil submitted over one thousand pages of various tax returns and other documents. On May 4, 2007, Hogil and Wendy submitted formal responses and objections to document requests. Both Sapir and Hogil continued to exchange informal requests and responses throughout 2007.

At the conclusion of the Rule 2004 investigation, there were no documents suggesting the occurrence of an alleged refinancing transaction. The only document mentioning a refinancing transaction was an affidavit by Wendy (the "Wendy Affidavit") stating that as of April 29, 2002, "there has been no refinancing or sale of Hogil under Hogil's plan of reorganization." Additionally, Hogil produced a document that indicated a loan payable to WIV in the amount of $3 million was still outstanding as of July 31, 2006.[2] During the initial pretrial conference on January 16, 2008, counsel to Hogil indicated to the Court that there were no documents in connection with the September 20, 2001 refinancing transaction and, therefore, was "stuck" without any documents.

After the December 7, 2007 commencement of this action and the January 16, 2008 conference, Hogil submitted documentation that a refinancing under the Hogil Plan occurred when Hogil borrowed $2.8 million from JP Morgan Chase Bank (the "Chase

---

[1] Innomed's Rule 2004 request number 18 sought "[a]ll documents evidencing payments to Howard Wendy by Hogil for dividends or distributions by Hogil to Howard Wendy on and after December 1, 2000"; request number 19 sought "[a]ll documents evidencing payments to Howard Wendy by Hogil other than for dividends or distributions by Hogil to Howard Wendy on and after December 1, 2000, together with documents setting forth the purpose of each such payment"; and request number 20 sought "[a]ll documents evidencing payments by Hogil to the Wendy Investment Vehicle [the "WIV"], together with documents setting forth the purpose of each such payment."

[2] The Court takes note that Bruce Minkoff's affidavit dated March 31, 2008, states that "a $3 million loan remained outstanding to the WIV as of July 31, 2006" and M. Jacob Renick's affidavit dated March 31, 2008 states ". . . the documents which Hogil produced showed a loan of $3 million outstanding as of July 26, 2005."

7

Statement") on September 20, 2001, and then on September 21, 2001, directed remittance of $500,000 to Wendy and $2.2 million to Wendy and his wife, satisfying the outstanding portion on a promissory note for $3 million issued by Hogil to the WIV after WIV purchased PNC Bank's $3 million claim against Hogil.

Sapir's second and third causes of action are based upon information set forth in Hogil's and Innomed's income tax returns for 2001, 2002 and 2003 (the "Income Tax Returns"), which stated that Hogil owed Innomed $563,988.00 as of January 1, 2002. Based on Hogil's income tax returns for 2002 and 2003, the $563,988.00 was reduced to $25,364.00 as of December 31, 2002, and to zero as of December 31, 2003. Hogil also produced a schedule of entries and calculations of the Hogil/Innomed Accounting (the "Journal Entries").

Sapir subsequently retained a forensic accountant, M. Jacob Renick ("Renick"), who investigated the propriety of such reductions. In response to Rule 2004 requests, Hogil produced documents from its warehouse and from its accountant's office, and the testimony by deposition of its president, ("Trager"), its chairman, Wendy, its bookkeeper/controller/assistant controller, ("McHugh"), and its accountant ("Barbash").

According to an affidavit by Renick, under Generally Accepted Auditing Standards, when an accounting or audit is performed, the production of supporting documentation or other means of supporting verification is required in order to establish the propriety of entries in an entity's books. As a result, Sapir challenges the validity and propriety of the reductions listed in the Income Tax Returns and Journal Entries and seeks a complete and detailed accounting of Hogil with respect to all transactions as of January 1, 2002 to determine the amount owed from Hogil to Innomed.

8

Sapir's third cause of action seeks the payment of the amount owed from Hogil to Innomed as established by the accounting. Since Hogil asserts that it has produced all of the documents that could possibly relate to the reductions, Sapir requests payment of the $563,988.00 owed as of January 1, 2002, before the alleged improper reductions.

## Discussion

### I.  Standard of Review

Federal Rule of Civil Procedure 56(c) as incorporated by Federal Rule of Bankruptcy Procedure 7056 provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the burden of demonstrating the absence of any genuine issue of material fact, and after this showing, the burden shifts to the non-movant to establish that there is a specific and genuine issue of material fact to warrant a trial. *Celotex*, 477 U.S. at 324. If the record in its entirety could not lead a rational trier of fact to find for the non-movant, then no genuine issue remains for trial. *Matsushita*, 475 U.S. at 587.

### II.  First Cause of Action

Sapir's first cause of action seeks recovery of the Class 5 claim owed to Innomed pursuant to the Hogil Plan in the amount of $186,052.50, which became due upon the earlier of the sale or refinancing of Hogil or the 30th month anniversary of the February 1, 2001 effective date of the Hogil Plan (August 1, 2003). Sapir filed the instant complaint on December 7, 2007. The date six years before is December 8, 2001. The 30th month

9

anniversary date of the February 1, 2001 effective date of the Hogil Plan is August 1, 2003.  Hogil argues that since payment of the Class 5 claim became due upon the September 20, 2001 refinancing transaction, Sapir's present cause of action, brought on December 7, 2007, is barred by the applicable six-year statute of limitations.  For the reasons expressed on the record at oral argument, the Court prohibited Hogil from asserting its statute of limitations defense.  In doing so, the Court rejected the September 20, 2001 date of refinancing of Hogil as the date upon which the applicable statute of limitations began to run.  Accordingly, the filing of the complaint was timely.

    **a) <u>Setoff</u>**

Hogil argues a setoff defense against all claims for amounts due to Innomed from Hogil's funding of Innomed's counsel, Davis & Gilbert LLP ("Davis & Gilbert"), in Innomed's post-confirmation Alza litigation and from the costs and expenses incurred by Hogil from retailers returning expired Efidac. "[A]llowance of a setoff is a decision that lies within the sound discretion of the bankruptcy court." *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 140 (2d Cir. 1998); *see also Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979) ("Allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court."); *see also In re Genuity*, 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005).

Setoff avoids the "absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913). However, under Bankruptcy Code § 553, "pre-petition obligations may only be set off against one another," *In re Genuity*, 323 B.R. at 83 (citing *Cumberland Glass Mfg. Co. v. De Witt,* 237 U.S. 447 (1914)). Similarly, post-petition obligations may only

be offset against one another. *In re Genuity*, 323 B.R. at 83 (citing *In re Shoppers Paradise,* 8 B.R. 271, 278 (Bankr. S.D.N.Y. 1980)); *see also In re Ross-Viking Merch. Corp.*, 151 B.R. 71, 75 (Bankr. S.D.N.Y. 1993) (holding debtor may recover amount owed from creditor post-petition since creditors post-petition debt cannot offset debtors pre-petition debt).

Under Sapir's first cause of action, setoff against Innomed's Class 5 claim is impermissible. First, Hogil cannot attempt to use the legal fees from Innomed's Alza litigation to set off against required payments pursuant to Hogil's Chapter 11 Plan. The Hogil Plan was confirmed in December 2000, with an effective date of February 1, 2001 and the Class 5 claim represented amounts owed to Innomed at the time of Hogil's bankruptcy proceeding in 1999. Innomed's lawsuit against Alza did not commence until August 2001. Therefore, any payments by Hogil funding the Alza litigation were post-petition payments and cannot be used to setoff against Hogil's pre-petition obligations.

Second, Hogil did not provide evidence of the checks and invoices necessary to establish the amount of the setoff, and did not request discovery for the checks and invoices until after Sapir indicated at the pretrial conference that he would cross-move for summary judgment. Therefore, Hogil is precluded from claiming it needs discovery from Davis & Gilbert to introduce evidence of legal fees as a setoff to Innomed's claims.

Last, Hogil cannot claim a setoff with respect to legal fees allegedly paid by Hogil on Innomed's behalf on or after the filing of the Innomed bankruptcy proceeding on April 30, 2002 since Hogil never requested or obtained Court approval to pay for Innomed's post-petition legal fees, nor was a court order requested or obtained by Davis & Gilbert approving the amount of the post-petition fees.

11

Since there is no issue of material fact regarding liability and damages, and Hogil is, as a matter of law, prohibited from setoff, Plaintiff's motion for summary judgment is granted in the amount of $186,052.50. Accordingly, pursuant to the Hogil Plan, the Class 5 claim, nonpayment of which created a cause of action for payment, is due to Innomed.

### III.    Second Cause of Action

Sapir's second cause of action seeks a complete and detailed accounting from Hogil for all transactions between Hogil and Innomed commencing January 1, 2002 to determine the validity and propriety of the transactions in which the amount owed to Innomed, according to Hogil's Journal Entries and income tax returns for 2001, 2002 and 2003, was reduced from $563,988.00 to zero as of December 31, 2003.

Sapir submitted an affidavit from the forensic accountant, M.. Jacob Renick ("Renick"), which Hogil does not rebut or dispute, stating that under Generally Accepted Auditing Standards, when an accounting or audit is performed, the production of supporting documentation or other means of supporting verification is required in order to establish the propriety of entries in an entity's books. Through the production of unsupported Journal Entries, Income Tax Returns, other documents and the testimony of four of its employees who could not recall or explain the transactions, Hogil failed to provide the necessary support to verify the propriety of the deductions reducing the amount owed to Innomed from $563,988.00 to zero. As a result, Sapir is entitled to the accounting it seeks to determine the validity of the reductions.

12

**IV.     Third Cause of Action**

Sapir's third cause of action seeks payment for all sums owed to Innomed from Hogil as revealed from the accounting. Since Hogil asserted that it produced all documents in its and its accountant's possession that could possibly relate to the preparation of the returns, Sapir seeks payment of the full $563,988.00 listed as owed to Innomed as of January 1, 2002 on Hogil's Income Tax Returns and Journal Entries. Hogil claims that Sapir's third cause of action is barred by the statute of limitations, as the $563,988.00 in dispute arose from Efidac sales, which terminated on March 29, 2001, the date of the termination of the Alza Agreement.  However, Hogil's argument that the last date of sales triggers the commencement of the statute of limitations fails because Hogil's duties did not terminate at that time.  Hogil's duties were not exhausted or completed by March 29, 2001.  Hogil's duties continued.  Thus, Hogil's Journal Entries and income tax return submissions for 2002 and 2003 reflecting unsubstantiated reductions, as discussed below, provide the triggering dates for any statute of limitations. Accordingly, calculating from December 31, 2002 or December 31, 2003, brings the Plaintiff clearly within six years by filing a complaint on December 7, 2007.

Under New York law, "[t]he time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed." N.Y. C.P.L.R. § 203(a) (2001). A cause of action accrues when a breach of contract occurs. *Ely-Cruikshank Co., v. Bank of Montreal*, 81 N.Y.2d 399, 401 (1993) (bank's breach of exclusive right-to-sell clause started running of statute of limitations when bank secretly negotiated with buyer, not when building was sold); *Guild v. Hopkins*, 63 N.Y.S.2d 522 (N.Y.App.Div. 1946);

*Edlux Constr. Corp. v. State of New York*, 300 N.Y.S. 509 (1937), *aff'd,* 277 N.Y. 635 (1938).

When the contract contains ambiguous terms, a breach of contract may occur as the course of performance by both parties can establish the respective contractual obligations between the parties. *See Coliseum Towers Assocs. v. County of Nassau*, 2 A.D.3d 562, 564 (N.Y. App. Div. 2003) ("the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence.") (quoting *Old Colony Trust Co. v. Omaha*, 230 U.S. 100, 118 (1913); *see also Waverly Corp. v. City of New York*, 48 A.D.3d 261, 265 (N.Y. App. Div. 2008) ("The best evidence of the intent of parties to a contract is their conduct after the contract is formed.").

The Restatement of Contracts states:

> Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.

Restatement (Second) of Contracts § 202(4) (1981).

Furthermore, even if there is no breach of an express agreement in a contract, there may be a breach of an implied condition. *See BGW Dev. Corp. v. Mount Kisco Lodge No. 1552*, 247 A.D.2d 565, 566 (N.Y. App. Div.1998) ("Every contract contains an implicit obligation and covenant of good faith and fair dealing.").

In determining when a breach occurs, "as a general rule, when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." *John J. Kassner & Co., Inc. v. City of New York*, 46 N.Y.2d 544, 550 (1979) (citations omitted).

14

According to New York Jurisprudence:

where a right of action grows out of the receipt or detention of money . . . by a . . . person acting in a fiduciary capacity, the time within which the action must be commenced is computed from the time when the person having the right to make the demand discovered the facts upon which the right depends.

75 N.Y. Jur. 2d Limitations and Laches § 61

Here, as stated in the first of the five express terms articulated in the two-page Efidac Agreement, Hogil was obligated to "distribute, market and sell on behalf of" Innomed "all products sold under the 'Efidac/24' trademark," and to "*manage all aspects relating thereto*." (emphasis added). The remaining four terms of the agreement obligated Innomed to pay Hogil (i) 15% of net sales of Efidac, (ii) commissions to sales brokers in Hogil's sales network, (iii) marketing expenses relating to Efidac sales and (iv) reimbursements for all vouchered business and entertainment expenses.

The Efidac Agreement does not specify when final payment of the $563,988.00, owed to Innomed as of January 1, 2002, was due. However, since Hogil was obligated to manage all aspects relating to the distribution, marketing and selling of Efidac on behalf of Innomed, and Innomed was to reimburse Hogil for expenses resulting from the distribution, marketing and selling of Efidac, the calculation of the reimbursements and remittance of the payments were aspects relating to Efidac for which Hogil was obligated to manage.

Additionally, any ambiguity over Hogil's obligation to calculate all sums owed to Innomed in its management of all aspects relating to Efidac is established by the course of performance between Hogil and Innomed. According to the undisputed deposition testimony of Wendy and McHugh, Hogil handled all of the bookkeeping, calculations, deductions and remittance of payments to Innomed relating to Efidac sales. Thus, under

15

the course of performance between the two parties in furtherance of the Efidac Agreement, Hogil's management duties included the proper calculation, deduction and remittance of sums owed to Innomed.

The express terms of the Efidac Agreement establish that Hogil's responsibilities to Innomed did not terminate upon the physical sale of Efidac; but rather, Innomed's entitlement to final payment was conditioned on Hogil's contractual duty to calculate and deduct expenses owed to Hogil from the amount owed to Innomed before remitting payment to Innomed. Upon the alleged final sale of Efidac in March 2001, Innomed suffered no injury and had no cause of action. However, any failure by Hogil to properly perform its contractual duty to calculate and make deductions before remittance of the amount owed to Innomed would result in a breach of contract, giving rise to a cause of action in which N.Y. C.P.L.R. § 213 prescribes a six-year period to bring an action.

As previously mentioned, under Generally Accepted Auditing Standards, when an accounting or audit is performed, the production of supporting documentation or other means of supporting verification is required in order to establish the propriety of entries in an entity's books.

Hogil argues that the information provided in the produced documents including the Hogil/Innomed Accounting and the Journal Entries indicate costs and expenses incurred from returns of Efidac from prior years' sales, justifying the year 2002 reduction from $583,988.00 to $25,364.00 and the year 2003 reduction from $25,364.00 to zero. As the Renick Affidavit indicates, under Generally Accepted Auditing Standards, such journal entries need support or verification in the form of a cancelled check, bank statement, receipt, wire transfer confirmation or some other document to establish the

16

legitimacy of the payment. Therefore, as the produced documents including the Hogil/Innomed Accounting and the Journal Entries are neither supported nor verified by any documentation, they do not demonstrate the propriety of the transactions.

In addition to the absence of any documentary support for the Journal Entries, none of Hogil's four witnesses were able to verify the propriety of the transactions. When Hogil's president, Trager, was presented with the schedule of Journal Entries produced by Hogil for the year 2002 listing transactions by which the $563,988.00 owed by Hogil to Innomed at the beginning of 2002 was reduced to $25,364.00 by the end of 2002, he testified that he had never seen the document before and had no knowledge of any of the information in the document. Hogil's Chairman, Wendy, was presented with the same document and testified that he had never seen the document and did not know if Hogil made any of the payments to Innomed in any of the amounts set forth in the document. Hogil's bookkeeper/controller/assistant controller, McHugh, testified that the 2002 document as well as a similar 2001 document did not look familiar. Lastly, Hogil's Accountant, Barbash, testified that he had not seen the document before and that he assumed Hogil would have backup for each item.

The produced documents, including the Hogil/Innomed Accounting and Journal Entries, and depositions are insufficient to establish the propriety of the reductions. Accordingly, each improper reduction, occurring in 2002 and 2003, resulted in a breach of contract, giving rise to a cause of action to recover the amount improperly deducted. Therefore, the third cause of action, commenced on December 7, 2007, is not barred by the statute of limitations.

Hogil's motion for summary judgment is denied as the statute of limitations began to run upon a breach of the Efidac Agreement and not upon the last sale of Efidac. Sapir's motion for summary judgment is granted, as there is no triable issue of fact regarding Hogil's breach of the Efidac Agreement in failing to properly calculate, deduct, and remit amounts owed to Innomed.

## V.    Interest

Regarding the issue of interest, New York Civil Practice Law and Rules § 5001 requires Interest to be "computed from the earliest ascertainable date the cause of action existed." The recovery of interest awarded from the date each payment became due is consistent with the "long standing recognition that the purpose of awarding interest is to make an aggrieved party whole" *Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581 (2001).

### a) First Cause of Action

Since there is no dispute as to the amount owed, summary judgment is granted as to interest on the amount of $186,052.50 from August 1, 2003 (the determined accrual date of Plaintiff's action herein).

### b) Third Cause of Action

Since the amounts within this cause of action were disputed and not determined until now, the Plaintiff is awarded interest upon the amount of $563,988 from the date of entry of judgment on this decision.

## **Conclusion**

Plaintiff is directed to settle an order reflecting this Court's ruling on one week's notice to Defendant and its counsel.

Dated:  White Plains, NY
        March 12, 2009

                                                          _/s/Adlai S. Hardin, Jr._____
                                                                   U.S.B.J.